Mark Brnovich
Attorney General

Michael K. Goodwin, Bar # 014446
Ann Hobart, Bar # 019129
Assistant Attorneys General
1275 West Washington
Phoenix, Arizona 85007-2997
Telephone:  (602) 542-7674
Telephone:  (602) 542-8347
Facsimile:    (602) 542-7644
Michael.Goodwin@azag.gov
Ann.Hobart@azag.gov

Attorneys for University Defendants

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Nicholas Alozie,<br><br>          Plaintiff,<br><br>vs.<br><br>Arizona Board of Regents, et al.,<br><br>          Defendants. | Case No. CV-16-03944-PHX-ROS<br><br>**DEFENDANTS' MOTION TO DISMISS COUNTS III AND IV OF THE COMPLAINT** |

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Defendants hereby move to dismiss Count III and Count IV of Plaintiff's Complaint.

**I.    Introduction**

In late 2014, Arizona State University ("ASU") professor and faculty head Nicholas Alozie applied unsuccessfully for the position of dean of ASU's College of Letters and Sciences. In March 2015, Alozie received an annual evaluation which concluded that his work performance in 2014 was satisfactory but noted areas for improvement in his research output and university service. Because of the noted deficiencies, Alozie's appointment as faculty head was provisionally renewed for three months effective July 1, 2015. ASU subsequently renewed the appointment, however, and Alozie remains an ASU faculty head to this day.

1    In this lawsuit, Alozie alleges that he was denied appointment to dean, received a
2 mixed performance review, and was provisionally renewed as faculty head in 2015
3 because of his race (African American) and national origin (Nigerian) and in retaliation
4 for engaging in protected activity and speech.  Among other claims, he alleges (1)
5 ASU's method of selecting deans has a disparate impact on African Americans in
6 violation of Title VII (Count III); and (2) the individual Defendants retaliated against
7 him in violation of his First Amendment rights because, when applying for the dean
8 position, he submitted a written statement to the search committee complaining that he
9 would not be selected for the position because the selection process was a sham (Count
10 IV).
11    Plaintiff's disparate *impact* discrimination claim (Count III) should be dismissed
12 because it is not reasonably related to the charge alleging disparate *treatment*
13 discrimination and retaliation that Alozie filed with the EEOC in August 2015.
14 Therefore, he has not exhausted his administrative remedies, and this Court lacks
15 jurisdiction over his disparate impact claim.  Count III also should be dismissed because
16 Plaintiff has failed to allege a facially neutral employment practice that has a disparate
17 impact on a group of employees because they are African American.  Alozie therefore
18 fails to state a claim for disparate impact discrimination.
19    Count IV should be dismissed because Alozie's statement to the search committee
20 complaining about the selection process involves a private grievance over a personnel
21 issue, not a matter of public concern, and therefore does not enjoy First Amendment
22 protection.  Alternatively, if the Court concludes that Alozie has pled sufficient facts to
23 state a First Amendment claim, individual Defendants Duane Roen, Marlene Tromp,
24 Michael Crow, Robert Page Jr., and Mark Searle are entitled to qualified immunity,
25 because it is not clearly established that the First Amendment applies to a statement like
26 Alozie's.
27
28

For all of these reasons, as discussed more fully below, the Court should dismiss Counts III and IV for lack of jurisdiction and for failure to state a claim. Fed R. Civ. 12(b)(1) and 12(b)(6).

## II. Factual Background

Alozie began his employment at ASU in 1991 as an assistant professor. (Doc. 1-1 ¶ 32.) He was promoted to associate professor and tenured in 1994. (*Id.*) In 2001, he was promoted to full professor. (*Id.* ¶ 33.) He has served as faculty head of the Social Science Department at ASU's Polytechnic East Campus since 2001. (*Id.* ¶¶ 34-36.)

In 2009, Alozie's department became part of the newly established School of Letters and Sciences. (*Id.* ¶ 37.) In February 2014, Defendant Duane Roen was appointed interim director of the school. (*Id.* ¶¶ 39-41.) Before his appointment, Roen served as faculty head of the Interdisciplinary Studies Department within the School of Letters and Sciences. (*Id.* ¶ 41.) Later in 2014, ASU "decided to convert the School of Letters and Sciences into a College of Letters and Sciences, which would be governed by its own Dean." (*Id.* ¶ 43.) In August 2014, Roen notified College of Letters and Sciences faculty that his title was changed from Interim Director to Interim Dean. (*Id.* ¶ 46.)

ASU opened the position of Dean of the College of Letters and Sciences for applications on October 22, 2014. (*Id.* ¶ 48.) Alozie applied for the position on November 14, 2014. (*Id.* ¶ 49.) Three other individuals, including Roen, also applied. (*Id.* ¶ 54.) "ASU set up a search committee of ASU faculty and administrators to select and interview candidates for the position." (*Id.* ¶ 51.) ASU selected Defendant Marlene Tromp to head the search committee. (*Id.* ¶ 52.)

Alozie met with the search committee on December 1, 2014. (*Id.* ¶ 57.) At the outset of the meeting, Alozie told the committee he had an opening statement to read. (*Id.* ¶ 58.) In the interest of time, Alozie and the committee agreed that Alozie would not read his statement but would instead distribute copies to the committee members at the

1 end of the meeting. (*Id.* ¶ 59.) Alozie answered the search committee's questions before
2 distributing his statement. (*Id.* ¶ 60.)

3     In the statement, Alozie complained as follows:

> [T]he word in the College is that there is really no vacancy here, that this Dean's position has already been promised and that the university is simply going through the motions to dot its i's and cross its t's with this hiring process. Thus, I am expected, just like everyone else in the college, to back off and let the impending coronation take place.

(Doc. 1-1, Ex. 1 at 2.)

    Alozie alleges that Tromp "and ASU" decided not to offer him a second interview or the position because of the statement. (*Id.* ¶ 70.) He alleges that Defendants Michael Crow, Mark Searle, and Robert Page Jr. "participated in the decision not to award Dr. Alozie the position and/or invite him for an interview." (*Id.* ¶ 71.)

**III.   Legal Argument**

    **A.   The Court Should Dismiss Alozie's Disparate Impact Discrimination Claim (Count III).**

        **1.   This Court lacks jurisdiction because Alozie failed to exhaust his administrative remedies.**

    To establish jurisdiction over his Title VII disparate impact claim, Alozie must first have exhausted his administrative remedies. *B.K.B. v. Maui Police Dep't,* 276 F.3d 1091, 1099 (9th Cir. 2002). The Court may not consider allegations of discrimination in violation of Title VII that Alozie did not include in his administrative complaint to the EEOC unless they are "like or reasonably related to the allegations made in the EEOC charge." *Id.* at 1100 (quoting *Green v. Los Angeles Cty. Superintendent of Schs.*, 883 F. 2d 1472, 1475-76 (9th Cir. 1989)). In his Complaint, Alozie alleges Title VII claims for disparate treatment discrimination based on race and national origin and retaliation, as well as for disparate impact discrimination. (*See* Doc. 1-1, Counts I-III.) In his EEOC charge, however, Alozie has alleged only disparate treatment discrimination and

4

1  retaliation. (Doc. 1-1 ¶ 26 & Exhibit A hereto.)[1]  That is insufficient to exhaust a claim
2  for disparate impact discrimination. *See, e.g., Donaldson v. Microsoft Corp.*, 205 F.R.D.
3  558, 571 (W.D. Wash. 2001) (disparate treatment charge did not exhaust disparate
4  impact claim); *Goethe v. Cal. Dep't of Motor Vehicles*, No. 2:07-CV-01945-MCE-GGH,
5  2008 WL 489554, at *6 (E.D. Cal. Feb. 20, 2008) ("Because Plaintiff pled only facts that
6  would reasonably have led to an investigation of disparate treatment or retaliation, he
7  failed to exhaust his administrative remedies, and this Court lacks jurisdiction over . . .
8  his disparate impact claim."); *cf. Brown v. Puget Sound Elec. Apprenticeship & Training
9  Trust,* 732 F.2d 726, 730 (9th Cir. 1984) (disparate impact charge did not encompass
10 disparate treatment claim).

11  A disparate treatment claim is separate and distinct from a disparate impact claim.
12 *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 52-53 (2003).  "Liability in a disparate-
13 treatment case depends on whether the protected trait actually motivated the employer's
14 decision.  By contrast, disparate-impact claims involve employment practices that are
15 facially neutral in their treatment of different groups but that in fact fall more harshly on
16 one group than another and cannot be justified by business necessity." *Id* at 52 (internal
17 citations omitted); *see also Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 988
18 (1988) (noting that while disparate treatment claims require proof of discriminatory
19 intent, disparate impact claims do not).

20  In his EEOC charge here, Alozie only alleged facts that reasonably would have
21 led the EEOC to investigate disparate treatment or retaliation. (Ex. A.)  He checked the
22 boxes for retaliation and discrimination based on race and national origin, and
23 specifically alleged (1) Roen, a Caucasian, announced that he had been permanently
24 appointed dean in July 2014 even though the position would not be officially announced
25 until October 2014; (2) Alozie applied for the dean position and was initially among the

---

[1] Without converting a motion to dismiss into a motion for summary judgment, a court may consider evidence on which the complaint relies if (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

candidates that ASU selected to screen for the position; (3) Alozie submitted a written complaint to the search committee that Roen's unofficial appointment to the dean position violated "university policy and effectively eliminated the possibility that [he] would receive full consideration for the permanent Dean position"; (4) after reading Alozie's complaint, the search committee "suspended the screening process" and told Alozie it "was genuinely impressed by [his] talents" but "felt the college needed different leadership for its next phase of development"; (5) ASU awarded the permanent dean position to Roen and subsequently; (6) Roen gave him a negative performance evaluation in March 2015; (7) Alozie's faculty head appointment was reduced to probationary status; and (8) Alozie was told that one of his previously approved programs would not be implemented. (*Id.*)

The discrimination and retaliation that Alozie alleged in his EEOC charge was intentional and affected only him, i.e., ASU chose to select a Caucasian man rather than Alozie for the dean position, and evaluated him negatively and changed the terms of his employment because he complained about it. (*Id.*) Alozie did not allege any neutral employment policies or practices that disproportionately harmed African Americans as a group. (*Id.*) Therefore, Alozie has failed to exhaust his administrative remedies on his disparate impact claim, which should be dismissed for lack of jurisdiction under Rule 12(b)(1). *Accord De Los Santos v. Panda Exp., Inc.*, No. C-10-01370-SBA, 2010 WL 4971761, at *4-5 (N.D. Cal. Dec. 3, 2010) (dismissing disparate impact claims for lack of jurisdiction because EEOC charge had alleged only intentional discrimination and retaliation).

### 2. Alozie's allegations do not state a claim for disparate impact discrimination.

Count III should also be dismissed because Alozie has not alleged sufficient facts to support a disparate impact claim. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (a claim may be dismissed under Rule 12(b)(6) if plaintiff has not alleged sufficient facts to support a cognizable legal theory). To state a disparate

impact claim, Alozie must allege facts that show "a significant disparate impact on a protected class caused by a specific, identified, employment practice or selection criterion." *Stout v. Potter*, 276 F.3d 1118, 1121 (9th Cir. 2002).  And as previously discussed, the challenged practice or selection criterion must be facially neutral, although its adverse effects fall disproportionally on a protected group. *Raytheon*, 540 U.S. at 52.

Alozie fails to state a disparate impact claim because he fails to identify a specific, facially neutral practice or selection criterion that has disproportionally excluded African Americans from "the position of an academic Dean or higher at ASU." (Doc. 1-1, ¶ 1.)  Alozie has identified two practices that he alleges cause a disparate impact on African Americans:

> ASU would appoint Caucasian individuals to "interim" positions, and then promote the individuals to the permanent position, either (1) without a formal search or (2) after a sham search process merely undertaken to give an appearance that the position has been opened up for competition to the public, including minorities, when in reality it has already been promised to a pre-selected candidate.

(Doc. 1-1 ¶ 45; *see also* ¶¶ 117-18.)  Neither of these alleged practices is facially non-discriminatory.  The first alleges that ASU actively prefers making Caucasians deans, and the second alleges that ASU occasionally engages in a pre-textual selective search to disguise its race-based preference.  Either way, Alozie alleges that ASU *intentionally* discriminates against African Americans in selecting its high-ranking administrators.

Moreover, Alozie's Complaint, like his EEOC charge, fails to identify a single African American other than himself who has been adversely affected by ASU's alleged employment practices.  On the contrary, he alleges that after he was passed over for the dean position, in an attempt at "damage control" and "to boost ASU's minority statistics," ASU "appoint[ed] a few new women and minorities to positions previously held by white males."  (Doc. 1-1 ¶¶ 91-92.)  Notably, Alozie alleges that these appointments, like the allegedly "sham" application process that he participated in, were nothing more than pretext for discriminating in favor of Caucasian men.  (*Id.* ¶ 92 ("That these new appointments were merely for show . . . is evidenced by the fact that all or

7

1 nearly all of the white males who previously held such positions were given newly made
2 up or other positions within the institution.").)

3       Such allegations may support a claim for disparate treatment discrimination, but
4 they do not support a disparate impact claim. For this additional reason, Count III
5 should be dismissed for failure to state a claim under Rule 12(b)(6).

      **B.**      **The Court Should Dismiss Alozie's First Amendment Claim Because the Statement to the Search Committee Does Not Address Matters of Public Concern.**

9       Count IV, alleging that individual Defendants Roen, Tromp, Crow, Page, and
10 Searle all retaliated against Alozie in violation of his First Amendment rights, should
11 also be dismissed for failure to state a claim. A public employee's speech is only
12 protected under the First Amendment if the employee spoke "as a citizen upon matters of
13 public concern." *Connick v. Myers*, 461 U.S. 138, 147 (1983). "Whether an employee's
14 speech addresses a matter of public concern must be determined by the content, form,
15 and context of a given statement, as revealed by the whole record." *Id.* at 147-48.
16 However, the public-concern inquiry is a question of law that may be determined on a
17 motion to dismiss. *See, e.g., Turner v. City & Cty. of San Francisco*, 788 F.3d 1206,
18 1210-12 (9th Cir. 2015) (affirming dismissal of First Amendment retaliation claim under
19 Rule 12(b)(6) because plaintiff's speech did not address matters of public concern).
20 Alozie bases his First Amendment claim on his written statement to the search
21 committee. (Doc. 1-1 ¶ 127.) His claim fails because the statement does not address
22 matters of public concern through its content, its form, or its context.

      **1.**      **The statement's content does not warrant First Amendment protection.**

25 Alozie alleges that the statement to the search committee "challeng[ed] ASU's
26 racial hiring and promotion practices." (Doc. 1-1 ¶ 127.) That is incorrect. The
27 majority of the statement is just a summary of Alozie's qualifications for the dean
28 position. (Doc. 1-1, Ex. 1.) He discusses race only to encourage the search committee to

8

take it into account in his case, consistent with ASU's long-standing interest in appointing minority scholars to administrative positions.

> The fact that as a homegrown product of ASU having advanced through the ranks at ASU to head a faculty unit for nine years continuously, I am sitting before you here today to compete for the position of Dean at ASU is historic. That is what makes this a very special day. Traditionally, ASU is one of those places where we scramble to get minority scholars from outside to apply for these kinds of positions. If Provost Glick were here today, he would be proud of this milestone for ASU, although there are not many colleges at the university where the same success can be observed.

(*Id.* at 2.) Moreover, when Alozie complains that the search may be pro forma because Roen had already been promised the position, he admits that he was "expected, just like everyone else in the college, to back off and let the impending coronation take place." (*Id.*) Notably, he does not complain that he was at any greater disadvantage than anyone other than Roen because of his race.

"An employee's motivation [is] relevant to the public-concern inquiry." *Desrochers v. City of San Bernardino*, 572 F.3d 703, 715 (9th Cir. 2009.) Speech like Alozie's statement to the dean search committee, which "arose primarily out of concerns for his own professional advancement, and his dissatisfaction with his status" as a faculty head, does not address matters of public concern and therefore does not enjoy First Amendment protection. *Turner*, 788 F.3d at 1211.

 **2. The statement's form and context do not warrant First Amendment protection.**

The statement's form and context also fail to reach matters of public concern. When assessing these two factors, the Ninth Circuit "looks to the public or private nature of the speech, and to the speaker's motive." *Turner*, 788 F.3d at 1211. Alozie addressed the statement directly to the search committee, which was comprised of fellow ASU faculty members and administrators, in the context of his application for the dean position. Alozie did not raise concerns about ASU's hiring and promotion practices in any public forum, and he has not sought relief on behalf of any others that he believes

1 may be similarly situated. Such "individual personnel disputes and grievances" are
2 "generally not of public concern" and therefore do not warrant First Amendment
3 protection. *Desrochers*, 572 F.3d at 710.

4 For all of these reasons, the Court should dismiss Count IV for failure to state a
5 claim under Rule 12(b)(6).

### C. Alternatively, the Individual Defendants Are Entitled to Qualified Immunity Because It Is Not Clearly Established that the First Amendment Protects Speech Like Alozie's Statement.

The doctrine of qualified immunity shields public officials performing discretionary functions from personal liability under certain circumstances. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Here, the individual Defendants are entitled to qualified immunity even if they retaliated against Alozie in violation of his First Amendment rights, if they reasonably could have believed that their conduct was lawful "in light of clearly established law and the information that they possessed." *Cohen v. San Bernardino Valley Coll.*, 92 F.3d 968, 973 (9th Cir. 1996) (internal citation omitted). A right is clearly established when the contours of that right are "sufficiently clear" that every "reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 131 S.Ct. 2074, 2083 (2011).

In light of cases like *Turner* and *Desrochers*, it was not reasonable for the individual Defendants to understand that Alozie's self-serving statement to the search committee was protected speech. Nor was it reasonable for them to understand that they could not consider that statement, which accused the University and his colleagues of conducting a sham search for the dean position, when deciding whom to select for that position or when evaluating Alozie's performance as a faculty head. Therefore, if the Court does not grant this motion with respect to Alozie's First Amendment claim, it should grant the individual Defendants qualified immunity from that claim.

/ / /
/ / /

10

## IV. Conclusion

Defendants respectfully request that this Court dismiss Count III and Count IV of the Complaint. If the Court does not grant this motion with respect to Count IV, however, Defendants ask that it grant the individual Defendants qualified immunity on that count.

Respectfully submitted this 24th day of January, 2017.

    Mark Brnovich
    Attorney General


    /s/ Ann Hobart
    Ann Hobart
    Assistant Attorneys General
    Attorneys for University Defendants

I certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants this 24th day of January, 2017:

Michelle R. Matheson
Matheson & Matheson, P.L.C.
15300 North 90th Street
Suite 550
Scottsdale, Arizona 85260
Attorneys for Plaintiff


/s/ Ann Hobart
#5568087

11