**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Nicholas Alozie, | No. CV-16-03944-PHX-ROS |
| Plaintiff, | **ORDER** |
| v. | |
| Arizona Board of Regents, et al., | |
| Defendants. | |

On January 7, 2020, the Court granted in part and denied in part Defendant Arizona Board of Regents' (collectively, "ASU")[1] motion for summary judgment, setting for trial Plaintiff Nicholas Alozie's ("Alozie") Title VII retaliation claim. (Doc. 152.) On January 21, 2020, ASU timely filed a motion for reconsideration, asserting that the Court committed clear error when the Court did not apply the "but-for cause" standard set forth in *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338, 362 (2013). (Doc. 153.) Alozie responded that the Court applied the correct standard at the summary judgment stage, and therefore no error was committed. (Doc. 155.) ASU replied that there was no evidence, in addition to temporal proximity, to show causation, and temporal proximity alone was insufficient. (Doc. 160.) ASU's motion will be denied.

## BACKGROUND

The Court set forth the facts in detail in the Order addressing ASU's motion for

---

[1] Arizona State University is a non-jural governmental entity; the Arizona Board of Regents is the entity subject to suit pursuant to A.R.S. § 15-1625(B)(3). *Krist v. Arizona*, No. CV17-2524 PHX DGC, 2018 WL 1570260, at *2 (D. Ariz. Mar. 30, 2018).

summary judgment, and repeats only those facts necessary to understand ASU's motion for reconsideration. Alozie is a professor at Arizona State University. Alozie and three other candidates applied for the position of Dean of the College of Letters and Sciences and were interviewed by the search committee ("Committee"). At his interview, Alozie handed the Committee, chaired by Dr. Marlene Tromp ("Tromp"), a written statement. The statement was five pages long, and included a paragraph referring to a "Revolving Door" of minority faculty who could not achieve a "rewarding career with advancement" at ASU because "the environment was [not] favorable enough to warrant their staying" and a paragraph referring to "the impending coronation" of Dr. Duane Roen ("Roen"). (Doc. 152 at 4–5.)

All four candidates interviewed on the same day, December 1, 2014, and the Committee then discussed each candidate. (Doc. 152 at 6.) The Committee discussed Alozie's written statement, and late that night Tromp spoke to Dr. Barry Ritchie, the Vice Provost for Academic Personnel and the Provost's office liaison to the Committee, about Alozie's statement. (Doc. 152 at 6–7.) Early on the morning of December 2, 2014, Tromp sent emails to all four candidates. Alozie and one other candidate were not granted second interviews, but the two other candidates were granted such interviews, and one of those candidates, Roen, was ultimately selected as the Dean of the College of Letters and Sciences. (Doc. 152 at 7–8.)

The Court denied ASU's motion for summary judgment on Alozie's claim that he was denied a second interview in retaliation for his written statement. (Doc. 152.)

**ANALYSIS**

ASU has asked the Court to reconsider the decision to deny summary judgment. "Reconsideration is appropriate if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). In this District, motions for reconsideration will ordinarily be denied "absent a showing of manifest error or a showing

of new facts or legal authority." Local R. Civ. P. 7.2(g)(1). ASU argues that Alozie has failed to present the necessary evidence to show but-for causation under the standard set out in *University of Texas Southwestern Medical Center v. Nassar*, 570 U.S. 338 (2013). (Doc. 160.) The parties are correct that the but-for test, rather than the motivating factor test laid out in *Dawson v. Entek Int'l*, 630 F.3d 928 (9th Cir. 2011), applies here. ASU therefore requests the Court reconsider the denial of summary judgment. However, the Court's conclusion that Alozie provided sufficient causation evidence to raise a genuine issue of material fact was not manifestly in error, because Alozie has presented evidence of close temporal proximity as well as additional evidence sufficient to support an inference of but-for causation.

*Nassar* did not expressly address temporal proximity, and neither *Nassar* nor any post-*Nassar* Ninth Circuit cases have clearly required a plaintiff to provide additional evidence where there is close temporal proximity. It is noteworthy that here, less than eighteen hours passed between the protected activity (submitting the written statement) and the adverse employment action (the decision not to advance Alozie to a second interview). This is distinguishable from the months-long periods which the post-*Nassar* Ninth Circuit have found to be insufficient to support findings of but-for causation, and is significantly less than the five weeks which the Ninth Circuit has previously found to constitute "close temporal proximity." *Compare Bagley v. Bel-Aire Mech. Inc.*, 647 F. App'x 797, 801 (9th Cir. 2016) (denial of summary judgment appropriate where five-week gap constituted "close temporal proximity" and other evidence supported claim) *with Knickmeyer v. Nevada ex rel. Eighth Judicial Dist. Court*, 716 F. App'x 597, 599 (9th Cir. 2017) (finding that a gap of "many months" between protected activity and adverse employment action was not "so close as to support an inference of but-for causation"), *Lombardi v. Castro*, 675 F. App'x 690, 692 (9th Cir. 2017) (finding no but-for causation when "substantial time" passed between protected act and decision not to promote), *and Serlin v. Alexander Dawson Sch., LLC*, 656 F. App'x 853, 856 (9th Cir. 2016) (finding that a three-month gap between protected act and adverse action, without any other evidence, was insufficient

causation evidence).

Some circuits, including the Third and Sixth, have explicitly addressed the role of temporal proximity in the but-for causation analysis, and have held that close temporal proximity, on its own, is sufficient to prove causation. *See, e.g.*, *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 505 (6th Cir. 2014) ("[T]emporal proximity alone can be enough."), *Blakney v. City of Philadelphia*, 559 F. App'x 183, 186 (3d Cir. 2014) (holding that where temporal proximity is so close as to be "unusually suggestive," i.e. under ten days, such proximity alone may satisfy but-for causation). Other circuits, including the Second and Fifth, require additional evidence. *See, e.g.*, *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 847 (2d Cir. 2013) ("Temporal proximity alone is insufficient to defeat summary judgment at the pretext stage. However, a plaintiff may rely on evidence comprising her prima facie case, including temporal proximity, together with other evidence such as inconsistent employer explanations, to defeat summary judgment at that stage.") (internal citation omitted), *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007) ("[W]e affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but for causation."); *see also Román v. Castro*, 149 F. Supp. 3d 157, 173 (D.D.C. 2016) (denying summary judgment where there was six-week gap between interview and decision not to hire plaintiff, as well as additional evidence).

ASU cites multiple District of Arizona cases that held more evidence than mere temporal proximity is required. (Doc. 153 at 3–4.) However, many of the cases involve poor employees seeking to avoid termination. *See Drottz v. Park Electrochemical Corp.*, No. CV 11-1596-PHX-JAT, 2013 WL 6157858, at *15 (D. Ariz. Nov. 25, 2013) (applying the stricter standard as a means to prevent employees from using Title VII as "a shield against the imminent consequences of poor job performance."). And the assertion that poorly performing employees are not entitled to the protection of Title VII is questionable because all employees are entitled to statutory protections, not merely the well-performing ones. *See Montell*, 757 F.3d at 507 ("[I]t cannot be open season for supervisors to . . . harass

poorly performing employees. Such employees must still be provided with their legal protections.").

In any case, although the eighteen-hour gap between the protected activity and the adverse employment action is close enough to be unusually suggestive, the Court need not decide whether temporal proximity alone is sufficient because Alozie has provided additional evidence. In the context of a university faculty hiring committee, "the impermissible bias of a single individual at any stage of the promoting process may taint the ultimate employment decision in violation of Title VII." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 450 (2d Cir. 1999), *as amended on denial of reh'g* (Dec. 22, 1999) (citing *Lam v. University of Hawaii* ("*Lam I*"), 40 F.3d 1551, 1560 (9th Cir. 1994)). A "full factual inquiry" can be necessary "to distinguish . . . permissible, though relatively personal, motivations from unlawful ones" in the faculty hiring context. *Lam I*, 40 F.3d at 1564; *see also Lam v. Univ. of Hawaii* ("*Lam II*"), 164 F.3d 1186, 1188 (9th Cir. 1998), *as amended on denial of reh'g* (Feb. 2, 1999) ("[T]he mere presence of allegedly biased faculty members on a hiring committee . . . will not, of itself, carry a case to the jury, [but] should alert the trial court to the existence of triable issues of fact.").

ASU argues Alozie did not point to "even one person on the search committee" who expressed concern or considered Alozie's assertion about race. (Doc. 153 at 5.) But the record shows Committee member Dr. Jean Stutz, who "discussed Alozie's letter" with the Committee, told the OEI investigator that "[she], personally, would not want a dean that had preconceived opinions about her, that she was somehow biased based on a particular race/culture."[2] (Doc. 141-2 at 3.) From this the inference in the light most favorable to Alozie is that Dr. Stutz was reacting to the protected portion of the statement, which creates an issue of fact for the jury. *See Lam II*, 164 F.3d at 1188.[3] A different member of the

---

[2] Dr. Stutz also stated that Alozie's treatment of the Committee was a "contributing factor" in the decision not to bring Alozie back for a second interview, along with other reasons such as lack of administrative experience. (Doc. 141-2 at 2–3.)
[3] *See also Kim v. Arizona Bd. of Regents*, 293 F. App'x 477, 478 (9th Cir. 2008) ("We find a genuine issue of material fact regarding whether the University discriminated against Kim on the basis of his Asian ethnicity in denying Kim's application for promotion to full professor. Kim produced evidence of a discriminatory bias on the part of members of the relevant committees, which a jury could reasonably infer tainted the review and re-review

Committee, Dr. Pamela Stewart, corroborated this possible inference by stating she was "aware that part of what was at play were racial and cultural stereotypes." (Doc. 141-2 at 9.) Dr. Stewart did state that she "did not want to make her decision inadvertently based on any of that," but her statement makes clear that at least an additional Committee member understood Alozie's statement raised racial issues. (Doc. 141-2 at 9.)

Here, if the contemplation of race/culture concerns "was the straw that broke the camel's back," then those concerns were the but-for cause, even if Alozie's lack of administrative experience also "played a part in" the decision,. *Burrage v. United States*, 571 U.S. 204, 211 (2014). During the OEI investigation, Tromp explained that even the members of the Committee who were most in favor of bringing Alozie back for a second interview "understood that the letter was the thing that really hurt Alozie." (Doc. 141-2 at 12.) Why the letter hurt Alozie is a question for the jury.

The Court's conclusion that Alozie provided sufficient causation evidence to raise a genuine issue of material fact was not manifestly in error, although the Court originally applied the motivating factor test, and the motion for reconsideration will therefore be denied.

Accordingly,

**IT IS ORDERED** ASU's Motion for Reconsideration (Doc. 153) is **DENIED**.

Dated this 20th day of February, 2020.

Honorable Roslyn O. Silver
Senior United States District Judge

---

process. We have embraced the proposition that 'discrimination at any stage of the academic hiring or promotion process may infect the ultimate employment decision.'") (quoting *Lam I*, 40 F.3d at 1560).

- 6 -