**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

Nicholas Alozie,

    Plaintiff,

v.

Arizona Board of Regents, et al.,

    Defendants.

No. CV-16-03944-PHX-ROS

**ORDER**

Plaintiff Nicholas Alozie ("Alozie") is a professor at Defendant Arizona State University, a public university which is governed by Defendant Arizona Board of Regents (collectively, "ASU"). Alozie alleges that ASU refused to grant him a second interview for the position of Dean of the College of Letters and Sciences in retaliation for comments he made in a written statement to the search committee about the difficult environment for promoting minority scholars at ASU. Trial is set to begin on March 24, 2020. Alozie has filed three motions in limine (Docs. 166, 167, 168) and ASU has filed two (Docs. 173, 178).

## BACKGROUND

In 2014, ASU conducted an internal search to select a Dean for its College of Letters and Sciences. Four professors at ASU, including Alozie, applied for the position. A search committee interviewed each of the candidates. At his interview, Alozie handed the search committee, a written statement. This statement included comments about the difficult environment for promoting minority scholars at ASU and an assertion that the position of

Dean had already been promised. After the initial interviews, two candidates were invited to a second round of interviews, and two candidates, including Alozie, were eliminated from consideration. Dr. Duane Roen was ultimately selected as the Dean of the College of Letters and Sciences.

In March 2015, Alozie met with Erin Ellison ("Ellison"), a senior Equal Opportunity consultant with ASU's Office of Equity and Inclusion ("OEI"). Ellison investigated, interviewing several members of the search committee, and issued a report on October 8, 2015 concluding that the evidence was insufficient to support a violation of ASU's non-retaliation policy. Alozie also filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in August 2015. The EEOC conducted an investigation and issued a determination on June 10, 2016 stating "Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that [ASU] is in compliance with the statutes."

Alozie initially brought five claims, three against ASU (Title VII discrimination, Title VII retaliation, and disparate impact) and two against certain members of the search committee in their individual capacities (First Amendment and Equal Protection). The disparate impact claim was dismissed on a Rule 12(c) motion. The Title VII retaliation claim was limited by stipulation to ASU's decision not to grant Alozie a second interview, the Equal Protection claim was voluntarily dismissed, and the First Amendment claim was voluntarily dismissed against all parties except Dr. Marlene Tromp. The Title VII race discrimination claim and the First Amendment claim against Dr. Tromp were later dismissed on summary judgment. Thus, the only claim remaining for trial is Title VII retaliation with regard to ASU's decision not to grant Alozie a second interview.

Trial is set to begin on March 24, 2020. The parties have a number of disputes, some of which are resolved in this Order.

## LEGAL STANDARD

A motion in limine is a procedural mechanism to limit particular testimony or

evidence in advance. *United States v. Heller*, 551 F.3d 1108, 1111 (9th Cir. 2009). Judges have broad discretion when ruling on motions in limine. *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999).

**ANALYSIS**

*1. Alozie's Motion in Limine No. 1 (Doc. 166)*

Alozie moves to preclude ASU from "referring to, questioning about, commenting on, arguing or relying upon or in any other manner attempting to introduce into evidence in any way, any allegations, documents, or written or oral testimony or any reference or inference to the decision by the EEOC not to issue a letter of determination or to bring a suit directly."

ASU does not oppose this motion, but wishes to reserve the right to present evidence or refer to the EEOC if Alozie opens the door by referring to it first. The parties have stipulated that Alozie satisfied the administrative preconditions for filing suit.

Accordingly, Alozie's Motion (Doc. 166) is granted, as well as ASU's reservation of the right to present evidence.

*2. Alozie's Motion in Limine No. 2 (Doc. 167)*

Alozie moves to preclude ASU from "referring to, questioning about, commenting on, arguing or relying upon or in any other manner attempting to introduce into evidence in any way, any allegations, documents, or written or oral testimony or any reference or inference to the <u>conclusion</u> by Erin Ellison (ASU's Director of the Office of Equity and Inclusion [OEI]) that upon her investigation Dr. Alozie was not the victim of discrimination or retaliation." Alozie argues the fact of the investigation is prejudicial under Fed. R. Evid. 402 and 403; the conclusion regarding policy violations is irrelevant under Fed. R. Evid. 401; and the conclusion is inadmissible as an opinion on an ultimate issue under Fed. R. Evid. 704.

ASU argues that Alozie is estopped from arguing irrelevance under Fed. R. Evid. 401 because Alozie has announced an intention to offer evidence concerning Ellison's investigation and the evidence she obtained. ASU argues that the conclusions would not

create unfair prejudice or jury confusion under Fed. R. Evid. 403, and that Ellison expresses no opinion or conclusion on the ultimate legal issue of Title VII retaliation.

*Plummer v. Western Int'l Hotels Co., Inc.*, 656 F.2d 502, 505 (9th Cir. 1981) permits EEOC probable cause determinations to be admitted at trial, and *Arizona ex rel. Goddard v. Frito-Lay, Inc.*, 273 F.R.D. 545, 551–552 (D. Ariz. 2011) extends the holding to "reasonable cause determinations made by state administrative agencies," to which ASU's Office of Equity and Inclusion is analogous. But *Beachy v. Boise Cascade Corp.*, 191 F.3d 1010, 1015 (9th Cir. 1999), making a perhaps-inappropriate distinction between a probable cause determination (which the *Beachy* court considered non-final) and a determination of insufficient facts (which the *Beachy* court considered to be "a final agency ruling"), held that "an agency's determination that insufficient facts exist to continue an investigation is not *per se* admissible in the same manner as an agency's determination of probable cause." Therefore, "a district court . . . asked to admit an agency's determination that insufficient facts exist to continue an investigation" must "weigh the [determination's] prejudicial effect against its probative value pursuant to Rule 403." *Id.*; *see also Harrell v. City & Cty. of Honolulu*, No. 01-00223-MEA-KSC, 2006 WL 8436343, at *1 (D. Haw. Jan. 4, 2006) (a detailed letter which "speaks directly on several key points the jurors alone must decide" is highly prejudicial because "the 'jury might find it difficult to evaluate independently evidence of discrimination' after being informed of the [agency's] final results") (quoting *Beachy*, 191 F.3d at 1015); *accord Gillum v. Safeway, Inc.*, No. 2:13-CV-02047, 2015 WL 9997201, at *3 (W.D. Wash. Oct. 16, 2015) (finding the agency's no cause determination inadmissible under Fed. R. Evid. 403 because of "a substantial risk that the jury will give undue weight to the [agency's] final determination").

Though relevant under Fed. R. Evid. 401, the prejudicial effect of Ellison's investigative memorandum outweighs the probative value under Fed. R. Evid. 403, and it is otherwise inadmissible pursuant to the Federal Rules of Evidence. Accordingly, Alozie's Motion (Doc. 167) is granted in part and denied in part. Ellison's investigative memorandum, listed as Trial Exhibit 72, is excluded. But the fact of the investigation is

admissible.

### 3. *Alozie's Motion in Limine No. 3 (Doc. 168) and ASU's Motion in Limine No. 2 (Doc. 173)*

Both parties have filed motions relating to the previously dismissed claims. Specifically, Alozie wishes to preclude references to previously dismissed disparate impact and disparate treatment claims, but does not object to the admissibility of the topic of discrimination at ASU (or in general). ASU moves to preclude evidence and argument relating to Alozie's previously dismissed claims of disparate impact, discrimination, post-search retaliation, and nonselection for the Dean position.

In particular, Alozie intends to offer evidence pertaining to the number of African American deans and the number of interim deans that have subsequently been hired as deans, while excluding any reference to the fact that he based his discrimination and disparate impact claims on that evidence and lost. Alozie argues that this evidence is essential context for Alozie's written statement, and that such evidence (which Alozie characterizes as "evidence of Dr. Alozie's belief and the underlying reasons for that belief -- that race discrimination has occurred at ASU") is necessary for Alozie to prove "that he believed Title VII violations have happened, and that his belief is reasonable." (Doc. 186 at 2.) In other words, Alozie insists that evidence of disparate hiring practices is necessary to prove the protected activity portion of his case, but ASU would benefit unfairly if they could bring up that he was unsuccessful on his disparate impact and discrimination claims.

ASU argues that allowing evidence regarding the dismissed claims would create a risk of confusing the issues and misleading the jury, and that the presentation of such evidence would waste time, and therefore the evidence is inadmissible under Fed. R. Evid. 403. ASU also argues that if the evidence was presented, without the fact that the claims based on that evidence had been dismissed, the jury would be "free to speculate about the dismissed claims," and there would be "a risk that the jury will decide the one remaining claim on an improper basis." (Doc. 184 at 2.) Alozie responds that the danger of confusion would be forestalled by retaliation-only jury instructions, and that he intends to stick to the

time limits.

Both parties cite to *Kimes v. Univ. of Scranton*, No. 3:14-CV-00091, 2016 WL 1274134 (M.D. Pa. Apr. 1, 2016), a case with similar facts where the district court decided to grant both parties' motions to preclude evidence regarding previously dismissed claims (including all evidence relating to the dismissed claims) in part because discussion of the dismissed claims was "apt to confuse the jury" under Fed. R. Evid. 403. *Id.* at *2.

The *Kimes* court's reasoning is persuasive. Accordingly, Alozie's motion (Doc. 168) and ASU's motion (Doc. 173) are each granted in part and denied in part. Alozie is permitted to give context for his written statement, but may introduce only information that was within his own personal knowledge and that he relied on to prepare his statement as of December 1, 2014. ASU is free to cross-examine Alozie on his personal knowledge sources, and the Court will consider giving a limiting instruction if necessary. All other evidence relating to previously dismissed claims is excluded.

*4. ASU's Motion in Limine No. 1 (Doc. 178)*

ASU moves (1) to exclude evidence and arguments regarding backpay, and (2) to limit evidence of emotional distress to past emotional distress (excluding physical injury and future emotional distress). First, ASU argues that there is a distinction between failure-to-interview claims and failure-to-hire or failure-to-promote claims, and that by stipulating to a limitation to the failure-to-interview claim only, Alozie "does not claim that he was unlawfully denied the Dean position." (Doc. 178 at 4.) ASU cites *Gardner-Lozada v. SEPTA*, No. CIV.A. 13-2755, 2015 WL 4505949, at *7 n.11 (E.D. Pa. July 24, 2015), where the Eastern District of Pennsylvania noted that the plaintiff had chosen to go to trial on a failure-to-promote claim rather than a failure-to-interview claim because a failure-to-interview claim limits recovery to damages attributable to the decision not to interview, "e.g., the embarrassment or damage to [the plaintiff's] reputation arising from not being selected to interview." The Third Circuit affirmed this analysis, "agree[ing] with the District Court's rationale" and noting that the plaintiff "went to trial solely on a 'failure-to-promote theory of liability, *not* a failure-to-interview theory of liability, presumably

because [the plaintiff] would not have been entitled to back-pay under a failure-to-interview theory." *Gardner-Lozada v. SEPTA*, 643 F. App'x 196, 200 n.8 (3d Cir. 2016). ASU then argues that even if Alozie was pursuing a failure-to-promote theory, Alozie failed to adequately disclose economic damages.

Alozie argues that the purpose of Title VII, to make people whole, requires backpay damages in the failure-to-interview context, asserting that without such a remedy a discriminatory or retaliatory employer could use a two-tier interview process as a "'get out of back pay free' card." (Doc. 185 at 3.) Alozie cites *Ruggles v. California Polytechnic State Univ.*, 797 F.2d 782, 786 (9th Cir. 1986) to argue that, in the retaliation context, the adverse employment action is "the closing of the job opening to [the plaintiff] and the loss of opportunity even to compete for the position." Alozie also argues that his economic damages were properly disclosed.

As the Court previously discussed, the caselaw regarding failure-to-interview claims that are not accompanied by failure-to-promote claims is unsettled. (Doc. 152 at 16.) This is also true for backpay in failure-to-interview claims. *Compare Gardner-Lozada*, 643 F. App'x at 200 n.8 (noting plaintiff "would not have been entitled to back-pay under a failure-to-interview theory") *with Aboubaker v. Cty. of Washtenaw*, No. 11-13001, 2015 WL 1245755, at *10 (E.D. Mich. Mar. 18, 2015) (awarding backpay on a failure-to-interview claim because "Washtenaw County's argument that because the case was a failure to interview claim, not a termination claim, [plaintiff] was not entitled to back pay or front pay beyond the date of his termination is not supported by the law") *and Drews v. Soc. Dev. Comm'n*, 95 F. Supp. 2d 985, 989 (E.D. Wis. 1998) (awarding plaintiff, who won a single failure-to-interview claim, 12.5% of the requested backpay under the lost chance doctrine because eight candidates, excluding plaintiff, interviewed for the job). This case is distinguishable from *Gardner-Lozada*, *Aboubaker*, and *Drews* because Alozie was granted a first interview, but not a second interview, and Alozie explicitly stipulated that the retaliation claim was "limited to [ASU's] decision not to grant [Alozie] a second interview," excluding ASU's "non-selection of [Alozie] for the position of Dean of the

College of Letters and Sciences." (Doc. 116 at 2.) The Court declines to follow *Drews* and holds that a plaintiff seeking backpay must prove that, in the absence of a Title VII violation, the plaintiff would have received the position. Because Alozie's claim does not include the failure to receive the position of Dean, he has explicitly foreclosed that possibility and cannot establish the requisite causal connection, and he is not entitled to backpay.

Second, ASU argues that Alozie's testimony of emotional distress should be limited to personal knowledge about his past condition. ASU moves to exclude any testimony about physical injury, because Alozie has never disclosed such an injury. ASU also argues that Alozie is not qualified to testify about future emotional distress, and that only a qualified medical expert may establish grounds for future emotional distress. ASU cites no caselaw to support this assertion, and the Court will not credit it. Alozie did not respond to ASU's arguments directly.

ASU's motion (Doc. 178) is granted in part and denied in part. Alozie may not introduce evidence and argument regarding backpay. Alozie may not introduce evidence of physical injury not disclosed to ASU during discovery. Alozie may introduce evidence of past, present, and future emotional distress that is within his personal knowledge, or is admissible pursuant to Fed. R. Evid. 701 as a lay witness opinion, but not evidence that requires expert testimony pursuant to Fed. R. Evid. 702.

Accordingly,

**IT IS ORDERED** Alozie's Motion (Doc. 166) is **GRANTED**.

**IT IS FURTHER ORDERED** Alozie's Motion (Doc. 167) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** Alozie's Motion (Doc. 168) and ASU's Motion (Doc. 173) are **GRANTED IN PART** and **DENIED IN PART**.

…

…

…

**IT IS FURTHER ORDERED** ASU's Motion (Doc. 178) is **GRANTED IN PART** and **DENIED IN PART**.

Dated this 10th day of March, 2020.

Honorable Roslyn O. Silver
Senior United States District Judge